WILLIAM WUEST, RESPONDENT, v. JOHN DORMAN, APPELLANT.—54 S. W. (2d) 1000.

St. Louis Court of Appeals.   Opinion filed December 24, 1932.

Rehearing denied December 28, 1932.

406

*S. P. McChesney* and *W. B. Dearing* for appellant.

*Strubinger & Tudor* for respondent.

**408**

DAUES, P. J.—This is an action for damages for personal injuries sustained by plaintiff while allegedly in the employ of defendant. Plaintiff recovered in the lower court, and defendant has appealed.

The case was tried on an amended petition which lays a complaint upon the negligence of the defendant on two grounds, (1) failure to provide boards and supports of sufficient width and thickness to serve as a fulcrum for a telephone pole which was being used as a lever, and, (2) negligence on the part of the defendant in prying under and against the ash pit, thereby causing the lever to fall and injure plaintiff.

The answer is a general denial.

The evidence tended to show the employment by defendant of plaintiff, and tended to show that the work being done at the time of the accident was the removal of an ash pit, and that a telephone pole placed upon a fulcrum was being used in moving the ash pit. There is evidence tending to show that defendant warned plaintiff not to use a clawbar in prying the ash pit, but that in doing so the fulcrum became dislocated and the extended end of the pole fell on plaintiff and injured him. There is evidence on the part of the defendant that he did not employ plaintiff to aid him in this work, and further evidence on the part of the defendant tending to show that plaintiff was physically disabled before the accident, and that the condition shown to the jury existed prior to this injury.

Plaintiff, from the abstract of the record, testified positively that he was employed by defendant to tear down an old shed, and that the defendant employed him on the day before the work was to be done, and employed him to help in the moving of the ash pit, and that he would pay him by a deduction from the rent; that his work in connection with the moving of the ash pit was to "handle the

pry." He testified that Dorman, the defendant, had his hand on the pinchbar and pried down, and that in doing so permitted the pole to fall on plaintiff, injuring his knee, right hip and back, requiring medical attention and many visits to the Veterans' Bureau, where he received therapeutic and light treatments. He spent some time in the Veterans' Hospital at Jefferson Barracks. He denied that he was suffering from any disabilities immediately before the accident.

The testimony of witness Hise, who was also working there at the time, was to the effect that defendant attended to the proppings under the pit, same having been blocked at an angle; that defendant instructed Hise to sit on the end of the pole, and that plaintiff was to pull it down; that the plaintiff told defendant not to shake the propping because it was all set, and that the defendant stooped over, gave a little jerk and the propping collapsed and the pole fell on plaintiff. He testified that defendant was using the crowbar in an endeavor to get a board under the pry and that plaintiff was cautioning defendant not to do so, but that defendant pressed down on the crowbar notwithstanding that complaint, and caused the pole to collapse.

The doctor testified that plaintiff was suffering from certain bone injuries which would be permanent, and that certain motions of the hip would be limited. Another physician corroborated him.

From the assignments of error submitted by appellant, it is doubtful whether reliance upon the demurrer to the evidence being overruled is properly here. However, this runs through the case and we hold that a case was made for the jury. In our system of jurisprudence it is for the jury to determine the credibility of the witnesses and the weight of the evidence.

Appellant complains that the court erred in giving plaintiff's instruction No. 1 because it broadened the issues raised in the pleadings, and "that the instruction tended to confuse rather than clarify the law in its application to the facts in the case," and that the instruction assumed a controverted fact.

Appellant also complains of instruction No. 7 in finding the measure of damages, and, finally, that the court erred in refusing to reprimand counsel for alleged grossly, improper and prejudicial remarks to the. jury.

Instruction No. 1 hypothecates the facts and then concludes in requiring the jury to find that the "plaintiff was exercising the care of an ordinarily prudent person under the same or similar circumstances, etc." Appellant contends that this broadened the issues because contributory negligence was not pleaded and had no place in this case, and cites a number of cases from the Supreme Court which it is contended sustains the appellant. Among these cases is the case of Degonia v. Railroad, 224 Mo. 564, 123 S. W. 807.

On the other hand, respondent relies upon that class of cases which hold that where the plaintiff assumes an unnecessary burden in his instruction no error prejudicial to the defendant has ensued, and cites such cases as Hutchinson v. Safety Gate Co., 247 Mo. 71, l. c. 90, 152 S. W. 52; White v. United Railways Co., 250 Mo. 476, 157 S. W. 593; Alexander v. Barnes Grocery·Co., 223 Mo. App. 1, 7 S. W. (2d) 370.

Obviously, we cannot go both ways. A decision requires us to go in one direction or the other. Most of the cases cited by appellant are easily distinguished from the case at bar. The Degonia case, supra, requires study and discussion. If an isolated excerpt is taken from the Degonia case, it would seem that we are compelled to hold the instruction erroneous unless we conclude that the later cases on the other side by implication overrule the Degonia case. Anyone thumbing our books of citations will discover that the Degonia case has been cited, distinguished and criticised as much as any case that has found its way in our reports. But notwithstanding that case, our courts have repeatedly held since that where an additional burden is assumed in plaintiff's instruction, such as requiring the jury to find that the plaintiff was not guilty of contributory negligence, although contributory negligence was not an issue, that such is no reversible error; those instructions have been condemned, but always held to be harmless to the opposite party. Therefore, unless and until the Supreme Court definitely decides in a case with that point squarely in issue that an instruction such as we have before us is reversible error, we will have to conclude that that high court does not interpret the Degonia case as holding this instruction reversible error. We have recently sustained such an instruction in Quinn v. Berberich, 51 S. W. (2d) 153. This case is now before the Supreme Court on *certiorari*. Of course, the court could well have refused this instruction without committing error.

Now, as said before, the Degonia case must be considered as to what the court actually decided, and when we look at the case in the light of what was decided it is distinguishable. In that case there was a general denial and a plea of contributory negligence. The petition was bottomed upon primary negligence and a violation of the humanitarian rule. The court was then considering whether the case was properly submitted on the primary negligence assignment, and the court reached the conclusion that under the plaintiff's proof the court should have declared as a matter of law that the deceased was guilty of contributory negligence, and that it therefore was error to submit that theory to the jury as it became a question of law for the court to decide, the court holding that if it was a case at all for the jury it was under the humanitarian rule. Primary negligence

should have fallen out because the plaintiff, or in that case the deceased, was guilty of contributory negligence as a matter of Law.

We confess we have had much difficulty with this instruction. But unless we disregard the cases which are to the effect that if the plaintiff in the absence of the issue of contributory negligence requires the jury to find that plaintiff was free of negligence; that the plaintiff has simply assumed more than he was required to prove and no reversible error has ensued, then we must reach the confident conclusion here that this instruction does not work reversible error.

The next complaint against instruction No. 1 is that the concluding portion of the instruction assumes that the plaintiff was injured. When the whole instruction is read, there can be not the slightest doubt that the jury was required to find that the plaintiff was injured in order to find against defendant. A very similar instruction and similar language was approved in Hutchinson v. Safety Gate Co., supra. Furthermore, a reading of the record shows that the question of injury was not disputed. The dispute was how he was injured and to what extent.

The next assignment relates to plaintiff's instruction No. 7 on the measure of damages. It permits recovery for "such loss of earnings, if any, as you may believe from the evidence he has suffered in consequence of said injuries, or will in all reasonable probability suffer on account of said injuries, if any."

The amount of earnings alleged in the petition to have been lost by plaintiff was limited to $45 per week for a certain designated time. However, this instruction does not confine the past loss of earnings, or the future loss of earnings to the amount specified in the petition.

Now, we have before us a petition which definitely fixes and alleges the loss of earnings. The instruction is wide open, except that the verdict should not be in excess of the total amount prayed for in the petition. That would not be reversible error if, in fact, the evidence with reference to the loss of earnings comported with the allegation of the petition. Unfortunately it does not. It is not easy to compute what that difference is, but repondent's counsel admits that it is as much as $600, and suggests to the court that somewhat novel procedure that we order a remittitur to that extent. Respondent presses the view that the case of Hill v. Union E. L. & P. Co., 260 Mo. 43, 169 S. W. 345, is a later case overruling those cases cited by appellant which hold the instruction erroneous.

In the Hill case, supra, it will be observed the court disposed of the contention that the instruction there was erroneous in a few lines. The reason, we think, that the Hill case is not an authority sustaining the views of the respondent is, as we gather from the

opinion, that the petition there did not set out a specified loss of earnings. It simply recited that the plaintiff was receiving $100 a month, and "that he had lost and would continue to lose this amount monthly." So that the court did not have before it a case in which the petition set out a specific loss of earnings for a definite term. Nor can we tell from the opinion in that case how the evidence comported with the petition. In this case there is a variance between the petition and the proof, the proof going higher, and considerably higher than the petition on this loss. And in view of the cases which we set out below, this instruction in the instant case must be deemed and held to constitute reversible error.

Some of the many cases which hold that an instruction is erroneous which fails to limit the amount of recovery for loss of time to the amount specified in the petition are: Smoot v. Kansas City, 194 Mo. 513, 92 S. W. 363; Reagen v. Peoples Motor Bus Co., 35 S. W. (2d) 945, where this whole question is fully discussed. See, also, Radtke v. St. Louis Basket & Box Co., 229 Mo. 1, 129 S. W. 508; Finley v. United Railways Co., 238 Mo. 6, 141 S. W. 866.

It is not necessary to discuss the point with reference to the objectionable argument, because that error will not likely occur on retrial.

We do not find ourselves supported by a precedent to order a remittitur under circumstances such as are before us, nor can we from the record, with correctness, compute the amount of a remittitur even should we find ourselves supported by authority to order such remittitur. It must be kept in mind that the appellant did not rely upon the point of the excessiveness of the verdict as such, but relied upon an attack upon the instruction, which was his right, to raise this question.

So that we conclude, after considerable difficulty with the point, that instruction No. 7 on the measure of damages as given, under the petition and the evidence, constituted reversible error.

Accordingly, the judgment is reversed and the cause remanded. *Becker* and *Chapman, JJ.,* concur.